**Linwood Orlando BARNES, As the Personal Representative of The Estate of Damon Sherrod Barnes, Deceased, Plaintiff,**

v.

**THE DISTRICT OF COLUMBIA, et al., Defendants.**

**No. CIV.A.02–0485 RMC.**

United States District Court, District of Columbia.

June 11, 2003.

William Herbert Bode, Peter C. Grenier, Bode & Grenier, L.L.P., Washington, DC, for Plaintiff.

Harold S. Ginsberg, Office of the Corporation Counsel, Washington, DC, Carl James Schifferle, Office of the Corporation Counsel, Washington, DC, for Defendants.

## ORDER ON MOTION TO DISQUALIFY COUNSEL

COLLYER, District Judge.

This is a lawsuit against the District of Columbia and two of its police officers for the alleged wrongful death of Damon Sherrod Barnes, in alleged violation of Damon Barnes's civil rights. The defendants are all represented by the Office of the Corporation Counsel. The plaintiff is represented by the law firm of Bode & Grenier, LLP. Pending before the Court is the defendants' motion to disqualify plaintiff's counsel.

Having carefully considered the briefs of the parties, the applicable law, and the full record herein, the Court will deny the motion to disqualify counsel.

### Background Facts

This lawsuit was filed on March 15, 2002, on behalf of plaintiff Linwood Orlando Barnes ("Mr.Barnes"), as personal representative of Damon Barnes's estate. Sometime in July or August 2002, Assistant Corporation Counsel Harold S. Ginsberg was assigned to the defense team. He met with at least one of the defendant police officers, appeared in court on behalf of the defense, and prepared pleadings and briefs in the case until October 2002, when a third party moved to intervene and to stay the case. Mr. Ginsberg heard that Bode & Grenier was hiring. He consulted with Senior Litigation Counsel Leonard C. Becker in the Office of the Corporation Counsel. Mr. Becker is former D.C. Bar Counsel and very experienced in dealing with the Rules of Professional Conduct. Mr. Ginsberg states that Mr. Becker advised him to notify his immediate supervisor of his intention to interview for a position with Bode & Grenier prior to doing so,

in order to avoid an appearance of impropriety. Mr. Ginsberg did so.

Mr. Ginsberg was a successful candidate for an associate's position with Bode & Grenier and began working for that firm on January 13, 2003. On February 19, 2003, Carl J. Schifferle, assistant corporation counsel who had worked with Mr. Ginsberg on this case, called Mr. Ginsberg and advised him that Rule 1.11(d)(1) of the Rules of Professional Conduct required him to submit a notice to the Corporation Counsel's Office.[1] Mr. Ginsberg submitted his notice to counsel for parties of record on February 21, 2003. On March 10, 2003, the Office of Corporation Counsel notified Bode & Grenier that it too needed to submit a notice, which was submitted on that date.

In the current motion, the defendants move for disqualification of Bode & Grenier because the law firm's notification was untimely. Memorandum of Points and Authorities in Support of Motion of Defendants District of Columbia, James Johnson and Rodney Butler to Disqualify Plaintiff's Counsel at 5 ("Motion"). They argue that

the firm continued its representation for more than two months after Mr. Ginsberg joined Bode & Grenier without filing the necessary notice. *Id.* Plaintiffs also challenge the adequacy of the notice because it does not specify when the appropriate instructions were given and screening procedures were implemented. Finally, the two officers assert that they have independent and individual rights and that the notices to the District of Columbia under Rule 1.11(c) and (d) do not apply to them.

Bode & Grenier opposes the motion and states, through affidavits and argument, that it timely implemented the appropriate safeguards to ensure that Mr. Ginsberg did not hear, read or benefit financially from the firm's representation of Mr. Barnes. It also argues that the interests of the police officers and the District converged, that a government entity can only act through its officials, and that the notices pertain to the Office of Corporation Counsel and the officers.

### Analysis

■ Clients are entitled to counsel who are dedicated, without conflict, to their

---

1. The Rules of Professional Conduct do not permit a lawyer who has represented one party on a matter to thereafter represent an opposing person in the same matter. RULES OF PROF'L CONDUCT R. 1.9. This limitation applies to the law firm with which a lawyer practices as well. *Id.* at 1.10(b). The rules give some leeway for government counsel leaving public service for private practice under Rule 1.11(c) and (d).

(c) The prohibition stated in [Rule 1.10(b)] shall not apply if the personally disqualified lawyer is screened from any form of participation in the matter or representation as the case may be, and from sharing any fees resulting therefrom, and . . .

(d) . . . [W]hen any counsel, lawyer, partner, or associate of a lawyer personally disqualified under paragraph (a) accepts employment in connection with a matter giving rise to the personal disqualification, the following notifications shall be required:

(1) The personally disqualified lawyer shall submit to the public department or agency by which the lawyer was formerly employed and serve on each other party to any pertinent proceeding a signed document attesting that during the period of disqualification the personally disqualified lawyer will not participate in any manner in the matter or with the representation, will not discuss the matter or the representation with any partner, associate, or of counsel lawyer, and will not share in any fees for the matter or the representation.

(2) At least one affiliated lawyer shall submit to the same department or agency and serve on the same parties a signed document attesting that all affiliated lawyers are aware of the requirement that the personally disqualified lawyer be screened from participating in or discussing the matter or the representation and describing the procedures being taken to screen the personally disqualified lawyer.

interests. The Rules of Professional Conduct are grounded on this basic premise. Governments need and want good young lawyers to devote some time to public service without depriving themselves of the ability to obtain employment thereafter. Recognizing this public purpose, the Rules allow government counsel to do what a lawyer moving from one firm to another cannot do without a client waiver: that is, move from one side to the other, with only notice to the government and parties. In all instances, in his new position, the lawyer must be shielded from information about the matter, input into the matter, and income from the matter.

The Rules of Professional Conduct are more than window dressing for the profession. In many ways, they represent the floor, not the ceiling, of lawyer responsibility. Here, Mr. Ginsberg is to be commended for talking first with Mr. Becker, an acknowledged expert in this area, for guidance as he left public service and went into private practice. There is no dispute but that Mr. Ginsberg followed Mr. Becker's advice to avoid even the appearance of impropriety by notifying his supervisor in the Office of Corporation Counsel about his interest in a position at Bode & Grenier prior to his interview with that firm. Thus, the District of Columbia had early notice in fact of Mr. Ginsberg's career move and, of course, knew in fact when he joined Bode & Grenier in January 2003.

■ Nonetheless, Mr. Ginsberg's official notice—and promise not to participate in the case or receive remuneration from it—was not sent until February 21, 2003, and Bode & Grenier only sent its own notice on March 10, 2003. The Court agrees with Corporation Counsel that the Rules include the concept of timeliness to the notice requirement. Otherwise, compliance could not be monitored and the opportunity for objection, if necessary, would be lost. Since the District of Columbia knew in fact of Mr. Ginsberg's new employment, the question is whether notice of the protections in place to avoid impropriety or the appearance of impropriety was insufficiently timely to warrant disqualification of counsel.[2]

The District of Columbia questions whether the appropriate Ethics Wall was erected between Mr. Ginsberg and the law firm's representation of Mr. Barnes from the very beginning of Mr. Ginsberg's association with the firm. There is no evidence to contradict the sworn affidavits of Messrs. Ginsberg and Grenier that the law firm has "always" had that Wall in place. Thus, the District of Columbia knew in fact that Mr. Ginsberg had associated with Bode & Grenier, the District of Columbia knew as of Mr. Ginsberg's letter that protections were in place, and the law firm in fact properly shielded Mr. Ginsberg from participation or benefit.

Bode & Grenier failed to notify Corporation Counsel of the details of the Ethics Wall until March 10, 2003, when Mr. Ginsberg had been with the firm for some time. This failure is not insignificant because timely notice is crucial to the firm's ethical responsibilities. In light of the findings above, however, and of the prejudice to the interests of Mr. Barnes were he to lose counsel of choice, the Court finds that disqualification in this circumstance should not be ordered and the District's motion in that regard will be denied.

The police officers separately argue that they have individual rights to loyalty from their former Lawyer Ginsberg and full

---

**2.** The Court finds that the protections outlined by Bode & Grenier, adopted to shield Mr. Ginsberg from knowledge, participation or benefit in the *Barnes* case, meet the requirements of the Rules of Professional Responsibility.

assurance that their interests have not been inadvertently compromised. *See* Motion at 7. These officers have been sued in their individual capacities and are alleged to owe personal damages, including punitive damages, to Mr. Barnes.

 Officers Johnson and Barnes had the right to retain their own counsel but chose to be represented by Corporation Counsel. This choice on their part cannot limit the rights of a government lawyer under Rule 1.11. To find otherwise would significantly undercut the purpose of this Rule, given the realities of government service. As the comments to the Rules state,

> [Ethics Walls are] permitted in order to avoid imposing a serious deterrent to lawyers' entering public service. Governments have found that they benefit from having in their service both younger and more experienced lawyers who do not intend to devote their entire careers to public service. Some lawyers might not enter into short-term public service if they thought that, as a result of their active governmental practice, a firm would hesitate to hire them because of a concern that the entire firm would be disqualified from matters as a result.

RULES OF PROF'L CONDUCT R. 1.11, Comment 5. Government lawyers are regularly called upon to represent government employees who are sued in both their official and individual capacities. When these employees elect legal representation from government attorneys, they accept their lawyers as what they are—government attorneys—along with the ethical implications that follow. The fact that a government attorney, as part of his government service, is called upon to represent individuals does not change that attorney's rights under Rule 1.11.

The Motion to Disqualify Counsel is **DENIED**.

**SO ORDERED.**